IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02538-REB-KLM

JERRY CUNNINGHAM,

    Plaintiff,

v.

THE STANDARD FIRE INSURANCE COMPANY, d/b/a One Travelers Property and Casualty Companies, and
THE TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA,

    Defendants.
_____

# ORDER
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant's **Motion for Protective Order** [Docket No. 46; filed May 6, 2008] (the "Motion"). The Court has reviewed the Motion, Plaintiff's Response [Docket No. 55; Filed May 20, 2008], Defendants' Reply [Docket No. 59; Filed June 4, 2008], the entire case file and applicable case law and is sufficiently advised in the premises. Accordingly, IT IS HEREBY **ORDERED** that the Motion is **GRANTED IN PART AND DENIED IN PART**, as set forth below.

    This case arises out of a homeowner's insurance claim submitted by Plaintiff to Defendant, Standard Fire Insurance Company. Defendants request that this Court enter a protective order to prevent Plaintiff from inquiring into various topics during Defendants' Rule 30(b)(6) depositions.

1

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Fed. R. Civ. P. 26(c) allows the court to limit the discovery of certain information. A protective order may issue upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). The good cause standard of 26(c) is not met by the conclusory statements of the opposing party. *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D.Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. United States Olympic Committee*, 209 F.R.D. 201, 206 (D.Colo. 2002)). As a general rule, the "good cause" calculation requires that the court balance "the [moving] party's need for information against the injury which might result from unrestricted disclosure." *Exum*, 209 F.R.D at 206 (citations omitted). In addition, the Court should consider any privacy interests that may be implicated and whether the case involves issues that may be important to the public. *Id.*

Further, pursuant to Fed. R. Civ. P. 26(b)(1), any discovery sought must be relevant. Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *See, e.g., Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D.Kan. 2001). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or

(2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. University of Colorado*, 220 F.R.D. 354, 350 (D.Colo. 2004) (citations omitted). Further, the objecting party cannot "sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Id.* (citation omitted). However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *Paradigm Alliance, Inc. v. Celeritas Technologies, LLC,* 2008 WL 678700, *2 (D.Kan. 2008).

Defendants argue that "[t]he issues raised in Plaintiff's Notice of Deposition are not relevant to Plaintiff's claims, and are generally oppressive and unduly burdensome . . . ." *Motion* [#46] at 4. Plaintiff's Rule 30(b)(6) Notice of Deposition contains seventeen potential deposition topics. *Id.* at Ex. A. Defendants argue that thirteen of the seventeen topics are irrelevant and oppressive. The Court will address each topic.

**I.    Category 1**

> How Defendants, and each of them, organized their documents and communications to [sic] claims such as Plaintiff's during the years 2004 through the present? *Id.* at 6.

Defendants argue that the manner in which they organize their documents related to other claims is not relevant to Plaintiff's breach of contract and bad faith claims, and that the request is overbroad, as the incident giving rise to the case occurred in February 2005. *Id.* Defendants further argue that, to the extent documents relating to Plaintiff's claim have been organized by Defendant's counsel, this information is privileged. *Id.* Plaintiff

3

contends that this information is relevant, as it "allows counsel to properly frame requests for production and other subsequent discovery . . . ." *Response* [#55] at 3. Plaintiff further states that the request is not overbroad, as Plaintiff is willing to limit it to claims similar to Plaintiff's, or "first party homeowners' claims in Colorado." *Id.*

Plaintiff asserts claims for bad faith and breach of contract. To succeed upon a claim for common law bad faith in Colorado, a plaintiff must show that: "(1) the insurer's conduct was unreasonable and (2) the insurer had knowledge that the conduct was unreasonable or a reckless disregard for the fact that the conduct was unreasonable." *Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1147 (10th Cir. 2005) (citing *Travelers Inc. Co. v. Savio*, 706 P.2d 1258, 1275-76 (Colo. 1985) (en banc)). The reasonableness of an insurer's conduct is judged objectively based on industry standards. *American Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). In addition, to succeed upon a breach of contract claim in Colorado, a plaintiff must prove the following elements: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Sewell v. Safeco Ins. Co. of America*, 2007 WL 2071617 (D.Colo. 2007) (citing *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F.Supp.2d 1161, 1170 (D.Colo. 2003)).

Considering the elements that Plaintiff must prove, and even assuming that Plaintiff has agreed to limit his deposition questions on this topic to first party homeowners' claims in Colorado from 2004 to the present, the Court cannot find that Defendant's conduct with

4

regard to other claims is relevant or that it will lead to the discovery of admissible evidence. *See Bituminous Cas. Corp. v. Monument Well Corp.*, 2007 WL 2712347, *1 (D.Colo. 2007) (unpublished decision) (finding conduct related to other claims by other insureds not relevant to the case at hand). Because this category of information is not relevant, the Court need not address Defendant's argument that the information sought is privileged. Accordingly, the Motion is **GRANTED** with respect to Category 1.

**II.     Categories 2 and 4**

> 2.      Knowledge of efforts undertaken by Defendants, and each of them, to produce documents requested by Plaintiffs in Plaintiff's Request for Production of Documents. When responding to this matter, exclude all attorney-client information.
>
> 4.      Knowledge of the factual basis supporting all affirmative defenses asserted by the Defendants. *Motion*[#46] at 6-7.

Defendants argue that these topics "invade[] the attorney-client privilege," as they seek the mental impressions of Defendants' attorneys. *Id.* at 7.[1] Plaintiff contends that "[i]t is unclear why [Defendants] argue[] that this subject invades attorney-client privilege. It has been excluded." *Response*[#55] at 3.

Without ruling on the issue of whether or not these communications are potentially protected by the attorney work product doctrine, the Court notes that the Tenth Circuit has disapproved the use of a blanket assertion of privilege, holding:

> A general refusal to cooperate [in discovery] is not enough. [A lawyer

---

[1]The Court notes that attorney "mental impressions" are protected by the attorney work-product doctrine, not the attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(3)(B); *United States v. Nobles*, 422 U.S. 225, 238 (1975).

asserting a privilege] must normally raise the privilege as to each record sought and each question asked so that . . . the court can rule with specificity.

*United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974); *see also In re Grand Jury Subpoena*, 697 F.2d 277, 279 n. 1 (10th Cir. 1983) (noting that the Tenth Circuit has "explicitly condemned . . . a blanket assertion of privilege"); *EEOC v. Albertson's LLC*, 2007 WL 1299194, *2 (D.Colo. May 1, 2007) (holding that blanket assertions of work product privilege before any questions have been asked at a 30(b)(6) deposition are premature).

As no questions have been asked at any deposition, the Motion for Protective Order is **DENIED WITHOUT PREJUDICE** with respect to Category 2 and 4 to the extent it seeks a blanket protective order based on the attorney work product privilege.

### III. Category 5

> 5. Knowledge of the content of all advertisements for homeowners' insurance in the Denver Metropolitan area during the years 1995 through 2004 including, but not limited to, television, radio, read material and internet-based material. *Motion* [#46] at 8.

Defendants argue that the information sought in this topic is irrelevant, not likely to lead to discoverable information, and overbroad. *Id.* Defendants point out that Plaintiff's Complaint does not contain any allegations which relate to advertising, and Plaintiff has not alleged that he saw a particular advertisement which led him to purchase Defendants' insurance. *Id.* Further, as the incident giving rise to the case occurred in February 2005, Defendants argue that information about advertisements ten years prior to the claim is overly broad. Plaintiff argues that as he claims unreasonable conduct on the part of Defendants, any standards and rules for Defendants' conduct as set forth in advertising

6

"create rules for claims handling which may be used by the finder-of-fact in determining whether [Defendants] acted reasonably." *Response* [#55] at 6.

The Court notes that it is improbable that an international insurance company established "standards" or "rules" for claims handling in its advertising. Giving Plaintiff the benefit of the doubt, however, the Court recognizes that Defendants may have made representations regarding their handling of claims in their advertising, and that such representations may be relevant to Plaintiff's bad faith claim. The Court therefore finds that Defendants' advertisements may have some marginal relevance to the element of whether Defendants acted unreasonably in adjusting Plaintiff's claim. Consequently, the Motion is **DENIED** with respect to Category 5. However, it is also clear that this Category is overly broad as it covers a ten-year time period. Accordingly, the scope of Category 5 is limited to advertisements occurring on or after **February 1, 2002**.

## IV.     Category 7

> 7.     Knowledge of all evaluations of the performance of Alice Barron, Susan Yeckely [sic] and Gilbert Friedmann during the years 2004 to present. *Motion*[#46] at 8.

Defendants argue that the information sought in this category is irrelevant and, also, that performance evaluations are private and confidential. *Id.* Plaintiff argues that any sensitive information should be redacted, and that "[a]lthough discovery relating to non-party employee files is not a step that courts undertake lightly, personnel files *are* discoverable when there is a legitimate need for discovery." *Response* [#55] at 7. Plaintiff states that he needs this information, as "[t]he information sought in evaluations shows

7

what conduct was encouraged by the employer and how the messages on claims handling are imparted to the adjusting personnel." *Id.* at 6.

"[P]ersonnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. . . ." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008). Indeed, the Supreme Court has emphasized that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] a 'a party or person from annoyance, embarrassment, [or] oppression . . . .'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citation omitted); *see also Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) (no abuse of discretion where "privacy interests, coupled with [the district court's] determination to keep the trial focused . . ., justified limiting [discovery of] personnel files").

It cannot be denied that personal privacy related to employee evaluations is an important concern. However, there are also countervailing interests that must be considered. That is, the scope of discovery must be broad in order to provide both sides with all the information necessary for proper and full litigation of all the relevant issues, as well as to eliminate surprise and to facilitate settlement. *See Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947). The Court also notes that a protective order has been entered in this case which limits the dissemination of confidential information to the appropriate persons [Docket No. 66; Filed June 25, 2008]. The Court finds that information from the performance evaluations which relates to claims handling conduct is relevant pursuant to

8

the Federal Rules of Civil Procedure. *See Bishelli v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 280850, *4 (D.Colo. 2008). However, to the extent that the performance evaluations address other subjects, they are not relevant. Therefore, Defendants need only provide information relating to claims handling conduct in addressing the Defendants' evaluations of Ms. Barron, Ms. Yeckley and Mr. Friedmann. Accordingly, the Motion is **DENIED** with respect to Category 7.

**V.     Category 8**

8. Knowledge concerning the storage, preservation and backup of emails relating to claims authored or received by Susan Yeckley, Gilbert Friedmann and Alice Barron as well as any other adjusters who handled Plaintiff's claims. *Motion*[#46] at 11.

Defendants argue that the information sought in this topic is irrelevant to whether Defendants breached Plaintiff's insurance policy or acted in bad faith while adjusting his claim. *Id.* Plaintiff states that he has requested all emails relating to his claim, and that the resulting number of documents he has received is small. *Response*[#55] at 10. As Plaintiff states that he "communicated with [Defendants] via email from the beginning of this claim, yet there are almost no emails pertaining to his claim during the year 2006," it appears that Plaintiff is arguing that he believes that Defendants lost emails or information relating to his claim. *Id.* However, Defendants have stated that, to their knowledge, "all emails between Plaintiff and [Defendants] have been disclosed. Plaintiff cannot reference, and has not referenced, any specific email that he believes is missing." *Reply*[#59] at 6.

The Court agrees that the "storage, preservation and backup of emails" is not relevant to whether Defendants breached Plaintiff's insurance policy or acted in bad faith

9

in adjusting his claim. *Motion* [#46] at 11. Plaintiff has not met his burden of establishing the relevancy of this information, or that this request is not redundant. Accordingly, the Motion is **GRANTED** with respect to Category 8.

**VI.    Category 9**

>   9.     Knowledge of all compensation programs in effect for a person handling Plaintiff's claims which provided incentives of any type that was [sic] in turn tied to job performance. *Motion* [#46] at 12.

Defendants argue that the information sought in this topic is not relevant and not calculated to lead to the discovery of admissible evidence. *Id.* In addition, Defendants argue that any financial information is presumptively inadmissible and not discoverable. *Id.* Plaintiff argues that "knowledge of compensation programs is an important aspect of knowing what claims practices are encouraged and what are not." *Response* [#55] at 10. However, Defendants have further stated that during the deposition of Susan Yeckley, the apparent adjuster of Plaintiff's claim, Ms. Yeckley testified that she was not aware of any compensation program and that she was compensated by her salary alone. *Reply* [#59] at 6. As such, Defendants argue that "any alleged compensation programs would not be applicable to the facts of this case, as no such programs would have had any effect on [Ms. Yeckley's] adjustment of Plaintiff's claim." *Id.* The Court agrees. Plaintiff has not established the relevance of this information. Accordingly, the Motion is **GRANTED** with respect to Category 9.

**VII.   Category 10**

>   10.    Knowledge of all incentive compensation programs for which any of the claims handlers and their supervisors and managers were subject during the

10

years 2004 through present. Such incentive programs include, but are not limited to, any incentives which affect the compensation of these individuals. *Motion* [#46] at 13-14.

Defendants argue that the information sought in this topic is not relevant and not discoverable as it seeks information which is proprietary, confidential and/or trade secrets, and overly broad. *Motion*[#46] at 14. Plaintiff's Response makes no argument with respect to Category 10. Accordingly, Defendants assert that "Plaintiff has therefore abandoned and waived any arguments regarding to the request asserted in topic 10. This is a tacit admission by Plaintiff that Plaintiff is not entitled to the information sought in topic 10." *Reply*[#59] at 7. The Court agrees that Plaintiff has offered no evidence establishing the relevance of this information to Plaintiff's claims. Accordingly, the Motion is **GRANTED** with respect to Category 10.

### VIII. Categories 11 and 16

> 11. Knowledge of industry standards and company standards relating to the handling of homeowners' claim such as Plaintiff's during the years 2004 through the present.
>
> 16. Knowledge of all industry standards and company standards, including industry rules and principles relating to the handling of homeowners' claims such as Plaintiff's during the years 2004 through the present. *Motion*[#46] at 14-15.

As Topics 11 and 16 are largely identical, they are analyzed together. Defendants argue that the information sought in these topics is not relevant as well as overbroad and unduly burdensome. *Motion* [#46] at 15. Plaintiff argues that this information is relevant, as "[u]nreasonable conduct is determined based upon standards set by the company and standards in the insurance industry." *Response* [#55] at 12.

11

Considering that the scope of discovery must be broad, *Hickman*, 329 U.S. at 507-508, and that the reasonableness of an insurer's conduct is judged objectively based on industry standards, *American Fam. Mut. Ins. Co. v. Allen*, 102 P.3d at 343, the Court finds that industry and company standards may have potential relevance to Plaintiff's claims such that discovery on this topic should be allowed. Accordingly, the Motion is **DENIED** with respect to Categories 11 and 16.

## IX. Category 12

12. Knowledge of all training materials given to persons handling Plaintiff's claims and their supervisors and the content of such material. *Motion*[#46] at 16.

### A. Relevance

Defendants first argue that this information is not relevant to Plaintiff's claims. *Motion* [#46] at 16. Plaintiff contends that "[c]laims manuals and procedure guides are highly relevant in a bad faith action because they often show that insurers *deliberately* train personnel to minimize claims and elevate the insurer's financial interests above the interests of the insureds." *Response* [#55] at 13 (emphasis in original).

The Court notes that both parties cite extensive law from other federal district and state courts in support of their respective arguments that this information either is or is not relevant. For example, Defendants rely extensively on *Garvey v. National Grange Mut. Ins. Co.*, where the court reviewed a similar request for claims manuals in the insurance litigation context, and found that these documents were not relevant, and therefore, not discoverable. 167 F.R.D. 391, 396 (E.D. Pa. 1996). The *Grange* court held that "[t]he contents of these manuals do not pertain to whether the plaintiff's present claim for loss is

12

'covered' under the insurance contract . . . . Moreover, the fact that the defendant may have strayed from its internal procedures does not establish bad faith on the part of defendant in handling the plaintiff's loss." *Id.* However, the Court has reviewed numerous other cases from other districts where such documents have been found to be both relevant and discoverable. *See, e.g., Ohio Cas. Ins. Co. v. Firemen's Ins. Co.*, 2008 WL 413849, *1 (E.D.N.C. 2008) (unpublished decision) (holding that claims manuals are discoverable and relevant in cases involving allegations of bad faith); *Brown v. Great Northern Ins. Co.*, 2006 WL 2246408, *1 (M.D.Pa. 2006) (unpublished decision) (holding that an insurance claims manual is discoverable in a bad faith claim, but the contents must remain confidential); *Mariner's Cover Site B Assocs. v. Travelers Indem. Co.*, 2005 WL 1075400, *1 (S.D.N.Y. 2005) (unpublished decision) (holding that claims manuals are relevant and discoverable in actions to recover insurance reimbursement).

The Court has further located two cases from within the Tenth Circuit where insurance claims manuals have been found to be relevant in the context of similar litigation. *U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 244 F.R.D. 638, 645 (D.Kan. 2007) (upholding an order requiring an insurance company to produce its claims handling manuals as relevant to whether the claims were properly handled); *Jeffryes v. Hartford Life and Acc. Ins. Co.*, 2006 WL 1186493, *3 (D.Colo. 2006) (requiring Defendant to provide "a general description of all claims manuals and training and instructional documents pertaining to the claims review and determination process"). Accordingly, although the authorities are split regarding the potential relevance and discoverability of this information,

the Court is mindful of the admonition that the scope of discovery must be broad, and therefore finds that this information has potential relevance to Plaintiff's claims such that its disclosure should be allowed. Therefore, the Court must next turn to Defendants' arguments regarding the proprietary nature of this information.

B.     **Protection of Trade Secrets**

Defendants argue that the information sought in this topic is proprietary and a trade secret. *Motion* [#46], p. 16. Although Defendants do not cite to the rule directly, the Court assumes their objection to be based on Fed. R. Civ. P. 26(c)(1)(G), the federal rule governing protection of trade secrets from discovery. However, "there is no absolute privilege for trade secrets and similar confidential information." *Centurion Industries, Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981) (citation omitted). That is, to successfully oppose discovery under 26(c)(1)(G), the party must first establish that the information sought is a trade secret and, second, that its disclosure might be harmful. *Id.* If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. *Id.* The district court is required to balance the need for the trade secrets against the claim of injury resulting from disclosure. *Id.* However, other than their single conclusory assertion that this information is proprietary, Defendants have provided no evidence that this information constitutes a trade secret. Nor have they established that disclosure of this information may be harmful to Defendants. As such, the Court finds that Defendants have not met their burden pursuant to the requirements of Fed. R. Civ. P. 26(c)(1)(G). *Centurion*

*Industries, Inc.*, 665 F.2d at 325.

Accordingly, the Motion is **DENIED** with respect to Category 12. Defendants are required to provide a general description of all claims manuals and training and instructional documents pertaining to the claims review and determination process that were available to Defendants' personnel who were personally involved in the substantive decisions regarding Plaintiff's claim.

## X. Category 13

> 13. Knowledge of the names under which Defendants did business regarding homeowners' policies issued in the Denver Metropolitan area with Plaintiff during the years 2004 through present. *Motion* [#46] at 16.

Defendants argue that the information sought in this category is irrelevant, ambiguous and unduly burdensome. *Id.* at 16-17. Defendants state that "[i]t is undisputed that [Defendant] Standard Fire wrote the policy at issue" in this case, and that because there are many insurers that are in some way affiliates of the Travelers group, it would be unduly burdensome to compile this information. *Id.* The Court agrees that this information is not relevant to Plaintiff's claims and is unduly burdensome to Defendants. Accordingly, the Motion is **GRANTED** with respect to Category 13.

## XI. Category 14

> 14. Knowledge of all steps taken by Defendants to be aware of the facts obtained in connection with this lawsuit. *Motion* [#46] at 17.

Defendants argue that this topic is "ambiguous and incomprehensible." *Id.* The Court agrees. The Court finds that this topic is vague and overbroad. Plaintiff has a duty to designate with specificity the issues to be addressed so that Defendants can adequately

15

prepare its Rule 30(b)(6) designee. A request this vague provides no direction for Defendant. The Motion for Protective Order is **GRANTED** with respect to Category 14.

Accordingly, for the reasons set forth above, IT IS HEREBY **ORDERED** that Defendant's **Motion for Protective Order** [Docket No. 46; filed May 6, 2008] is **GRANTED IN PART AND DENIED IN PART**.

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: July 1, 2008